IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNION CARBIDE CHEMICALS & PLASTICS TECHNOLOGY CORPORATION and UNION CARBIDE CORPORATION,<br>　　　　　Plaintiffs,<br>v.<br>SHELL OIL COMPANY, SHELL CHEMICAL COMPANY and CRI CATALYST COMPANY,<br>　　　　　Defendants. | Civil Action No. 99-274-SLR |
| SHELL OIL COMPANY,<br>　　　　　Plaintiff,<br>v.<br>UNION CARBIDE CORPORATION and UNION CARBIDE CHEMICALS & PLASTICS TECHNOLOGY CORPORATION,<br>　　　　　Defendants. | Civil Action No. 99-846-SLR<br>(CONSOLIDATED) |

**SHELL OIL COMPANY'S OPPOSITION TO UNION CARBIDE CORPORATION'S
MOTION FOR ENTRY OF JUDGMENT ON THE AFFIRMED JURY'S VERDICT**

OF COUNSEL:
John D. Norris
Howrey LLP
1111 Louisiana 25th Floor
Houston, TX 77002-5242

Claude M. Stern
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94665

Allen M. Terrell, Jr. (#709)
*Terrell@RLF.com*
Jeffrey L. Moyer (#3309)
*Moyer@RLF.com*
Steven J. Fineman (#4025)
*Fineman@RLF.com*
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants Shell Oil Company, Shell Chemical Company, and CRI Catalyst Company

Dated: February 14, 2006

RLF1-2980684-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..............................................................1

SUMMARY OF THE ARGUMENT ......................................................................................2

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT ...........................................................................................................................4

CONCLUSION ......................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

|  | Page |
|---|---|
| *Adkins v. Asbestos Corp., Ltd.*, 18 F.3d 1349 (6th Cir. 1994) | 7 |
| *Eaves v. County of Cape May*, 239 F.3d 527 (3rd Cir. 2000) | 10 |
| *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2nd Cir. 1998) | 6 |
| *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990) | 5, 6 |
| *King Instruments Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987) | 4 |
| *Krieser v. Hobbs*, 166 F.3d 736 (5th Cir. 1999) | 6 |
| *Loughman v. Consolidated-Pennsylvania Coal Co.*, 6 F.3d 88 (3d Cir. 1993) | *passim* |
| *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382 (9th Cir. 1992) | 7 |
| *Transmatic, Inc. v. Gulton Industrial, Inc.*, 180 F.3d 1343 (Fed. Cir. 1999) | 5, 8, 9 |
| *Union Carbide Chemicals & Plas. Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) | 1 |
| *Union Carbide Chemicals & Plas. Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005) | 2, 4 |
| *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226 (10th Cir. 1995) | 7 |

### STATUTES

| | |
|---|---|
| 28 U.S.C. § 271(f) | 3 |
| 28 U.S.C. § 1961 | 3, 5 |
| 35 U.S.C. § 271(f) | 3 |

## INTRODUCTION

Defendants Shell Oil Company, Shell Chemical Company, and CRI Catalyst Company (collectively "Shell"), file this brief in support of their opposition to Plaintiffs' Union Carbide Chemicals & Plastics Technology Corporation and Union Carbide Corporation (collectively, "Carbide") Motion for Entry of Judgment on the Affirmed Jury's Verdict. As set forth in detail below, Carbide's motion essentially seeks to have the affirmed judgment reentered in order to obtain a new calculation of the prejudgment interest portion of the affirmed judgment. Such an alteration of an affirmed judgment by a district court is unfounded and unsupported by any authority, and, in fact, runs afoul of established statutory and case law. Accordingly, Carbide's Motion should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

This case has been tried twice in this Court and appealed twice. After Shell prevailed in the first trial, the Federal Circuit affirmed that Shell was not liable under two asserted Carbide patents, but vacated the non-liability determination on a third asserted Carbide patent, U.S. Patent No. 4,916,243 ("the '243 patent"). *See Union Carbide Chems. & Plas. Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) (hereinafter "*Union Carbide I*"). The only asserted claim of the remaining '243 patent covered a particular process for making ethylene oxide using silver-cesium-lithium catalysts falling within specified recited limitations of the claim. *Id.* at 1171-72. The second jury trial resulted in a verdict that Shell was liable for infringing the asserted process claim based on processes carried out in the United States. On June 9, 2004, this Court entered its opinion and order on all pending motions. (D.I. 720-21). Judgment was entered for Union Carbide on June 15, 2004, awarding damages of $153,615,773.69, which included $42,403,108.67 in prejudgment interest. (D.I. 723). Shell appealed the judgment, and

the Federal Circuit issued its mandate on January 23, 2006, affirming the June 15, 2004 judgment as it pertained to Shell's liability for infringement based on United States processes and the $153,615,773.69 damage award with respect thereto. *See Union Carbide Chems. & Plas. Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1369 (Fed. Cir. 2005) (hereinafter "*Union Carbide II*"). Shell is presently preparing a petition for writ of certiorari to the United States Supreme Court seeking review of the Federal Circuit's decisions in this case.

## SUMMARY OF THE ARGUMENT

This Court already entered judgment on infringement and the damage award on June 15, 2004, and Carbide has cited no authority to have this Court reenter that judgment merely because it has now been affirmed. It would be improper for this Court to revoke its calculation of prejudgment interest found in the affirmed judgment and to recalculate prejudgment interest from June 1, 2004, to the present time, as such a recalculation would run contrary to both Federal Circuit and Third Circuit law. The date that prejudgment interest stops running is governed by 28 U.S.C. § 1961, as interpreted by regional circuit law. Section 1961 provides that post-judgment interest should be allowed on any money judgment "from the date of the entry of the judgment." The Third Circuit determines this date using the "meaningful ascertainment" test established by the United States Supreme Court. This test is satisfied once a judgment for damages is entered and the damages are supported, or "ascertained in any meaningful way," by the evidence. In this case, the Federal Circuit affirmed the $153,615,773.69 damage award, the $42,403,108.67 prejudgment interest determined by the Court and included in the award, and the reasons for granting the award, i.e., Shell's infringement of the '243 patent based on processes in the United States. It is undeniable that the damage award in this case was "meaningfully ascertained" by this Court on June 15, 2004, as everything pertaining to this award was affirmed by the Federal Circuit. Therefore, this Court should not award interest on the previously entered

2

and now affirmed judgment at a rate higher than the post-judgment interest rate afforded by § 1961, and should deny Carbide's motion to reenter the judgment and recalculate prejudgment interest from June 1, 2004 through the present time.

## STATEMENT OF FACTS

Carbide asserted infringement of claim 4 of the '243 patent with respect to processes carried out both inside and outside the United States. Prior to trial, this Court held that [35 U.S.C. §] 271(f) is not directed to process claims," and thereby excluded any evidence of EO processes practiced outside the United States as a basis for alleged infringement. (D.I. 561 at 6, ¶ 33). Following the jury's verdict providing for patent infringement damages, this Court entered its opinion and order on all pending motions related to the verdict. (D.I. 720-21). In its opinion, this Court adjusted the damages amount in the jury verdict to $111,212,665.02 in order to correct a clerical error and awarded prejudgment interest in the amount of $42,403,108.67 based on simple interest at prime rate. (D.I. 720 at 50). This Court's final judgment entered on June 15, 2004, included this amount of prejudgment interest. Shell filed a motion to stay enforcement or collection of the money judgment pending disposition of Shell's appeal to the Federal Circuit and to waive the supersedeas bond requirement. (D.I. 727). Shell's stay motion was unopposed by Carbide, and the Court granted Shell's motion on June 29, 2004. (D.I. 731). Moreover, prior to appeal, Carbide did not challenge in any way the Court's prejudgment interest methodology or calculation, nor did Carbide, prior to appeal, request that the Court alter in any way its prejudgment interest determination.

At the Federal Circuit, Shell appealed both the infringement and damages aspects of the Court's judgment, and Carbide appealed the Court's ruling on 28 U.S.C. § 271(f) with respect to foreign processes and the Court's ruling that there was no willful infringement. On appeal, Carbide did not challenge in any respect the Court's judgment respecting prejudgment interest.

3

The Federal Circuit's mandate issued on January 23, 2006, affirming the June 15, 2004 judgment, including the $153,615773.69 damage award, and remanding to this Court to address additional damages under § 271(f). (D.I. 739).

## ARGUMENT

Carbide has moved this Court to enter judgment on the $153,615,773.69 damage award even though this judgment has already been entered by the Court. Also, and without citation to any authority, Carbide has asked that this Court account for prejudgment interest from June 1, 2004, through the date of entry of the now requested reentered judgment. Both of these requests are improper, as they are unsupported by any rule of procedure, statute, local rule, case citation, or mandate. Since judgment on the damage award has already been entered, there is no need to enter the judgment again merely because it has been affirmed, and Carbide has cited no authority for doing so. Moreover, under established authority, it would be improper for this Court to calculate prejudgment interest from June 1, 2004, to the present time.

This Court already entered judgment on infringement and the damage award on June 15, 2004. (D.I. 723). The damage award was then affirmed by the Federal Circuit. *Union Carbide II*, 425 F.3d at 1378. Pending Shell's *certiorari* petition to the Supreme Court, the money judgment is now final.[1] Carbide admits as much throughout its brief in support of its motion. *See, e.g.*, Carbide's Opening Brief at 1 ("The affirmed ... damages award for sales for use in the United States is final..."). Carbide's own statement in its brief – that the affirmed damages award is final – sharply contrasts and even contradicts its request that judgment on the damage

---

[1] The only cases cited in Carbide's Opening Brief are cited for the proposition that a judgment in an action can be final and subject to execution, even though there remains unresolved issues on claims unaffected by the judgment. *See* Carbide's Opening Brief at 2-3; *see, e.g., King Instruments Corp. v. Otari Corp.*, 814 F. 2d 1560, 1562-63 (Fed. Cir. 1987). This proposition, however, is not contested by Shell.

4

award needs to be reentered. Quite simply, judgment on the damages award has already been entered. It does not need to be reentered after being affirmed by the Federal Circuit.

At the core of Carbide's motion, however, is a request for an accounting of prejudgment interest from June 1, 2004, to the present time. Not only is Carbide's request unsupported by any authority, it runs contrary to established law. Indeed, Carbide's brief fails to address any of the pertinent case law on the proper dividing line between prejudgment interest and post-judgment interest. A review of that case law reveals why Carbide chose not to address those cases.

The Federal Circuit has held that the operative judgment date from which to calculate interest, i.e., the judgment date that serves as the dividing line between prejudgment interest and post-judgment interest, is governed by 28 U.S.C. § 1961, and is determined by reference to regional circuit law interpreting § 1961. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347-48 (Fed. Cir. 1999). Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.... *Such interest shall be calculated from the date of the entry of the judgment....*" 28 U.S.C. § 1961(a) (emphasis added). While the "date of the entry of the judgment" has been treated differently among the regional circuits, the Third Circuit applies the "meaningful ascertainment" test from *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990), for determining the effective judgment date where prejudgment interest stops and post-judgment interest begins. *See Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 98-99 (3d Cir. 1993).

In *Kaiser*, the district court concluded that two successive jury verdicts awarding damages to the plaintiffs were unsupported by the evidence. *See Kaiser*, 494 U.S. at 829-30. After the first jury verdict, the district court vacated the judgment entered on that verdict and granted the defendant's motion for a new trial. *Id.* at 830. At the second trial, the jury awarded

the plaintiffs a higher damage award than what was awarded at the first trial. *Id.* The district court then granted judgment notwithstanding the verdict as to part of the damages awarded, vacated the judgment entered on the second jury verdict, and entered a third judgment on a reduced damages amount. *Id.* The Third Circuit vacated the third judgment entered by the district court and reinstated the second judgment, finding that there was sufficient evidence to support the second jury's damage award. *Id.* The Supreme Court granted *certiorari* to consider the calculation of post-judgment interest, and held that, under § 1961, post-judgment interest should run from the date of the second vacated judgment that was subsequently reinstated by the Third Circuit. *Id.* at 834-36. The Court reasoned that

> "[T]he purpose of post judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1280 (3rd Cir.1987). Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended post judgment interest to be calculated from such a judgment.

*Kaiser,* 494 U.S. at 836. The Supreme Court thus established the "meaningful ascertainment" test for determining when post-judgment interest begins, and, thus when prejudgment interest ends.

In *Kaiser,* post-judgment interest began to run once a judgment was entered for damages that were supported, or "ascertained in any meaningful way," by the evidence. This is the test used today by the Third Circuit, as well as many others. *See, e.g., Krieser v. Hobbs,* 166 F.3d 736, 747 (5th Cir. 1999) (following the "meaningful ascertainment" test of *Kaiser* to find that "For this case, upon the entry of the original judgment, the damages were fully ascertained. That amount did not change upon entry of the amended judgment.... Accordingly, the first entry of judgment, 3 July 1995, is the appropriate date from which such interest runs."); *Greenway v.*

6

*Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2nd Cir. 1998) ("In this case, judgment was ascertained in a meaningful way on October 23, 1996. Greenway is thus entitled to post-judgment interest from that date."); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1233 (10th Cir. 1995) ("In any trial, bifurcated or not, postjudgment interest should be calculated from the date that a plaintiff's damages are "meaningfully ascertained and included in a final, appealable judgment."); *Adkins v. Asbestos Corp., Ltd.*, 18 F.3d 1349, 1351 (6th Cir. 1994) ("Where the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way"); *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382, 1383 (9th Cir. 1992) ("The question presented here is whether the damages were sufficiently ascertained as of the date of the original judgment.... When the Court of Appeals affirms a district court judgment, interest is paid from the date of the original judgment.").

In *Loughman*, the Third Circuit noted that, while this standard is well formulated, its application is very fact specific. *See Loughman*, 6 F.3d at 98. At one extreme, where the original judgment is affirmed in whole, post-judgment interest begins, and prejudgment interest ends, from the date of the first judgment. *Id.* At the other extreme are cases in which the original judgment is reversed completely, and in those instances post-judgment interest does not begin accruing until the later judgment. *Id.* For cases that fall between the two extremes, where only portions of the original judgment are affirmed, the analysis focuses on which of the two extremes the case resembles most. *Id.* Essentially, a court must look at the extent to which liability and damages, as finally determined, were ascertained or established in the first judgments. *Id.* In *Loughman*, the Third Circuit found that the plaintiff was entitled to post-judgment interest from the date of the original judgment because "everything to which the plaintiffs are entitled was supported by the evidence at the first trial and was ascertained from the

7

jury's verdict in that trial," even though portions of the original verdict were later reversed or vacated. *Id.*

The Federal Circuit in *Transmatic* noted that the Sixth Circuit also applies the "meaningful ascertainment" test to determine when post-judgment interest begins and prejudgment interest ends. *See Transmatic*, 180 F.3d at 1348-49 (citing *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413 (6th Cir. 1990); *Coal Resources, Inc. v. Gulf & Western Industries, Inc.*, 954 F.2d 1263 (6th Cir. 1992); *Adkins v. Asbestos Corp., Ltd.*, 18 F.3d 1349 (6th Cir. 1994); and *Kelly v. HUD*, 97 F.3d 118 (6th Cir. 1996)). In *Transmatic*, the plaintiff patentee won a three million dollar damage award from the accused infringer. *Id.* at 1345. On appeal, the Federal Circuit vacated and remanded the damage award because the district court's opinion failed to explain the award sufficiently enough to permit appellate review. *Id.* at 1345. On remand, the district court explained its initial damages award in full detail, reentered judgment in favor of the patentee for the same amount, and further awarded the patentee over one million dollars in additional prejudgment interest for the period from the date of the original judgment to the date of the remand judgment. *Id.* at 1345.

In applying the "meaningful ascertainment" test from the Sixth Circuit, the same test used in the Third Circuit, the Federal Circuit found that the damages were in fact meaningfully ascertained at the time of the first judgment because the damages decision was ultimately correct on its merits. *Id.* at 1349. The Federal Circuit noted that the damages were reversed only because the district court made a procedural error in not explicitly explaining how the damages were calculated and supported by the evidence. *Id.* When the district court later explained its reasoning, and awarded the patentee the exact same damages amount, the Federal Circuit found that damages were meaningfully ascertained, but just not explained, at the date of the initial

judgment, and it was the date of that judgment at which prejudgment interest stopped and post-judgment interest started. *Id.*

Much like what Carbide is attempting to do here, the *Transmatic* patentee sought additional prejudgment interest between the time of the original judgment and the time after which the judgment was affirmed on appeal. *Id.* at 1349. This is improper, however, as § 1961 expressly sets forth how post-judgment interest is to be calculated. As noted by the *Transmatic* court,

> Because the Sixth Circuit has so clearly departed from the "equity" approach in favor of *Kaiser*'s "ascertained damages" test, we will not evaluate the equities of the case despite both parties' urgings. In *Kaiser*, the Supreme Court held that, regardless of the equities, it would not award a higher post-judgment interest rate than that afforded by § 1961 because Congress made the legislative judgment as to the applicable interest rate, and "courts may not legislate to the contrary." *Kaiser*, 494 U.S. at 840. The same consideration applies here. Congress has mandated a post judgment interest rate, and we too must not "legislate to the contrary" by basing our analysis on whether the rate of interest provided by Congress under § 1961 is "equitable." [The patentee] directs us to [*American Tel. & Tel. Co. v. United Computer Sys.*, 98 F.3d 1206 (9th Cir. 1996)], which held that when prejudgment interest is involved, the § 1961 "equities" approach favors calculating interest "in a manner that more fully compensates the plaintiff." *AT & T*, 98 F.3d at 1211. However, *AT & T* is a Ninth Circuit case and, as we have discussed, *supra*, the Sixth Circuit has not followed the "equities" approach since *Kaiser*.

*Transmatic*, 180 F.3d at 1349.

Like the Sixth Circuit, the Third Circuit follows the "meaningful ascertainment" test of *Kaiser*. In the instant case, the Federal Circuit affirmed the $153,615,773.69 damage award, the $42,403,108.67 of prejudgment interest determined by the Court and included in the award, and the reasons for granting the award, i.e., Shell's infringement of the '243 patent based on United States processes. Therefore, it is undeniable that the damage award in this case was "meaningfully ascertained" by this Court on June 15, 2004, as everything pertaining to this award was affirmed by the Federal Circuit. In other words, both the liability and the damages

9

were established in the June 15, 2004, judgment. *See Loughman*, 6 F.3d at 98 (in determining when prejudgment interest ends and post-judgment interest begins, "[A] court must look at the extent to which liability and damages, as finally determined, were ascertained or established in the first judgments."). As such, this Court should not, and can not, award an interest rate higher than post-judgment interest rate afforded by § 1961, and should therefore deny Carbide's motion to reenter the judgment and calculate prejudgment interest from June 1, 2004 through the present time.

Finally, neither domestic processes nor foreign processes that were not included in the now affirmed judgment previously entered by this Court afford Carbide the opportunity to effect a recalculation of prejudgment interest for the affirmed judgment award. *See, e.g., Eaves v. County of Cape May*, 239 F.3d 527, 542 (3rd Cir. 2000) (holding that where a district court judgment awarded damages and "attorney's fees and costs in an amount to be determined," while it was proper to assess post-judgment interest on the damages from the date of the original judgment, it was improper to assess post-judgment on the subsequently determined attorney's fees and costs from the date of the original judgment; instead, post-judgment interest on the attorney's fees and costs should be calculated from the date that those fees and costs are actually determined). Thus, if Carbide desires to obtain judgments with respect to such processes not included in the affirmed judgment, Carbide should seek such judgments from this Court through whatever proceedings might be appropriate for such purposes, including another trial if necessary.

## CONCLUSION

Carbide's motion to reenter the June 15, 2004 judgment and to recalculate the prejudgment interest included in that judgment is improper and contrary to established law. For the reasons set forth herein, this Court should deny Carbide's motion.

OF COUNSEL:
John D. Norris
Howrey LLP
1111 Louisiana 25th Floor
Houston, TX 77002-5242

Claude M. Stern
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94665

Dated: February 14, 2006

/s/
Allen M. Terrell, Jr. (#709)
*Terrell@RLF.com*
Jeffrey L. Moyer (#3309)
*Moyer@RLF.com*
Steven J. Fineman (#4025)
*Fineman@RLF.com*
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants Shell Oil Company, Shell Chemical Company, and CRI Catalyst Company

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**HAND DELIVER**
Jeffrey B. Bove
James D. Heisman
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
Wilmington, DE  19899


I hereby certify that on February 14, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

**FEDERAL EXPRESS**

| | |
|---|---|
| Bruce M. Kanuch | Harry J. Roper |
| The Dow Chemical Company | Raymond N. Nimrod |
| 1790 Building, Washington Street | Jenner & Block |
| Midland, MI  48674 | One IBM Plaza |
| | 330 North Wabash Avenue |
| | Chicago, IL  60611 |

**U.S. MAIL**
Steven J. Glassman
Benjamin C. Hsing
Kaye Scholer
425 Park Avenue
New York, NY  10022

_____
Steven J. Fineman (#4025)
*Fineman@RLF.com*
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899

RLF1-2980766-1