IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNION CARBIDE CHEMICALS & PLASTICS TECHNOLOGY CORPORATION, and UNION CARBIDE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SHELL OIL COMPANY, SHELL CHEMICAL COMPANY, and CRI CATALYST COMPANY,<br><br>Defendants. | C. A. NO: 99-274 (SLR)<br>(Consolidated with Civil Action No. 99-846) |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
ENTRY OF JUDGMENT ON THE AFFIRMED JURY'S VERDICT

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
David R. Bennett
JENNER & BLOCK
One IBM Plaza
Chicago, Illinois 60604
(312) 222-9350

Bruce Kanuch
The Dow Chemical Company
Legal Dept.
2030 Dow Center
Midland MI 48674
(989) 636-2115

Dated: February 22, 2006

Jeffrey B. Bove (Del. No. 998)
James D. Heisman (Del. No. 2746)
Scott G. Wilcox (Del. No. 3882)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Plaintiffs Union Carbide Chemicals & Plastics Technology Corporation and Union Carbide Corporation*

**TABLE OF CONTENTS**

I. ARGUMENT ........................................................................................................................ 1

    A. The Date Of Entry Of The Judgment Must Be The Date Of The Judgment Entered Post-Remand ........................................................................................................................ 2

    B. Under The "Meaningful Ascertainment" Test, Prejudgment Interest Should Still Be Applied Through The Date Of The Post-Remand Judgment ........................................ 3

CONCLUSION ........................................................................................................................ 6

# TABLE OF AUTHORITIES

**Cases**

*Briggs v. Pennsylvania R.R. Co.*,
334 U.S. 304 (1948) ............................................................................................. 2

*Coal Resources, inc. v. Gulf & Western Indus.*,
954 F.2d 1263 (6th Cir. 1992) ............................................................................. 3

*Eaves v. County of Cape May*,
239 F.3d 527 (3d Cir. 2000) ................................................................................ 5

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
494 U.S. 827 (1990) ............................................................................................. 3

*Krieser v. Hobbs*,
166 F.3d 736 (5th Cir. 1999) ............................................................................... 5

*Loughman v. Consol-Pennsylvania Coal Co.*,
6 F.3d 88 (3d Cir. 1993) .................................................................................. 3, 4

*Transmatic, Inc. v. Gulton Indus., Inc.*,
180 F.3d 1343 (Fed.Cir. 1999) ........................................................................ 2, 4

*Tronzo v. Biomet, Inc.*,
318 F.3d 1378 (Fed.Cir. 2003) ........................................................................ 2, 3

**Statutes**

35 U.S.C. §271(f) .................................................................................................... 4

**Rules**

Rule 37, Fed.R.App.P. ............................................................................................ 3

**Treatises**

16A *Federal Practice and Procedure* § 3983 (3d ed. 1999) ................................... 2

20A *Moore's Federal Practice* ¶ 337.12[3] (3d ed. 2005) ....................................... 2

I.  **ARGUMENT**

Shell does not dispute that Union Carbide is entitled to a partial judgment on the $153,615,773.69 damages award. Union Carbide therefore requests that this Court enter partial judgment and allow execution on the $153,615,773.69 damages award.

Shell also does not dispute that Union Carbide is entitled to an accounting for additional damages for sales that were not available to be presented to the jury. Therefore, Union Carbide requests that the Court order an accounting of Shell's catalyst sales that were not accounted for in the jury's verdict.

Shell's only dispute is whether Union Carbide is entitled to interest at the prejudgment interest rate from June 2004 through the entry of the post-remand judgment, or whether interest should instead be applied at the post-judgment rate. As shown below, the Federal Circuit's mandate requires finding that the prejudgment interest rate be applied through entry of the post-remand judgment. Furthermore, although the Court should never reach the "meaningful ascertainment" standard propounded by Shell because under the law that issue is exclusively reserved for the Court of Appeals, Shell's argument on that point is meritless.

This Court has already awarded interest through May 31, 2004. (D.I. 720 at 50). Therefore, attached is a calculation applying prejudgment interest to the damages award from June 1, 2004, through an estimated entry date of March 15, 2006, which results in additional interest of $10,115,718.65. (Exh. A). If, as Shell contends, the Court instead awards interest at the post-judgment rate from June 1, 2004, through March 15, 2006, the interest amount would be $5,614,855.65. (Exh. A).

1

### A. The Date Of Entry Of The Judgment Must Be The Date Of The Judgment Entered Post-Remand

There is no dispute that the date of entry of the judgment is determinative for the application of prejudgment interest versus post-judgment interest. Once the applicable date of the entry of the judgment is determined, interest prior to that date is awarded at the prejudgment interest rate and interest subsequent to that date is awarded at the post-judgment interest rate. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed.Cir. 1999) (citing a consensus among the circuits). Here, the dispute involves the determination of the appropriate judgment date for application of prejudgment interest.

The mandate of the Federal Circuit in this case requires that the date of entry of the judgment for purposes of determining prejudgment interest must be the date of entry of the *post-remand* judgment. When the Federal Circuit, or other appellate court, modifies a money judgment and remands to the district court for a new determination of damages and is silent as to how to treat interest as they did here, then the applicable date for entry of the judgment is the post-remand judgment date. *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 307-309 (1948); *Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1379 (Fed.Cir. 2003); 20A James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 337.12[3] at 337-9 (3d ed. 2005); 16A Charles Alan Wright, Arthur R. Miller *et al.*, *Federal Practice and Procedure* § 3983 at 635 (3d ed. 1999). Therefore, because the Federal Circuit's mandate in this case is silent as to how to handle interest, the Court should continue to award prejudgment interest on all damages up through the entry of a post-remand judgment disposing of all damages issues.[1]

---

1    Obviously, if Shell pays some of the damages award now, it will escape liability for prejudgment interest for the paid damages for the period from the payment until the ultimate date of the final judgment.

2

Shell's response relies on inapplicable case law to erroneously argue that this Court can choose a date of judgment for the purposes of awarding interest. However, no case permits a district court to modify the rule described above, that a mandate silent as to the interest issue must be enforced to require prejudgment interest up to the date of the post-remand judgment. The cases Shell cites merely show that an *appellate* court may instruct the district court on how to handle interest consistent with Rule 37(b), Fed.R.App.P.; *Tronzo*, 318 F.3d at 1381 ("the responsibility and authority for this determination [of the appropriate date] is assigned to the appellate tribunal."). However, these very cases expressly state that the district court is "powerless" to award interest inconsistent with the mandate. *Tronzo*, 318 F.3d at 1379.

**B.    Under The "Meaningful Ascertainment" Test, Prejudgment Interest Should Still Be Applied Through The Date Of The Post-Remand Judgment**

Although this Court should never reach application of the "meaningful ascertainment" test proposed by Shell, if it were to apply that test, the Court would find that prejudgment interest should still be applied through the date of a post-remand judgment awarding Union Carbide its entire damages. As applied by the Court of Appeals for the Third Circuit, the "meaningful ascertainment" test generally looks at "the extent to which liability and damages, *as finally determined*, were ascertained or established" in the original judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 98 (3d Cir. 1993)("the inquiry is distilled to its essence--the extent to which liability and damages, as finally determined, were ascertained or established in the first judgments")(emphasis added); *see Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990) ("Where the judgment on damages was not supported by the evidence, the damages could not have been 'ascertained' in any meaningful way."); *Coal Resources, inc. v. Gulf & Western Indus.*, 954 F.2d 1263, 1275 (6th Cir. 1992) (damages were sufficiently ascertained because "remittitur merely reduced the damages by a distinct amount *easily*

3

*determined from the facts of the case.*" (emphasis added)). Thus, the test is whether the final damages award on all issues can be determined.

In this case, the extent of Union Carbide's damages cannot be finally determined from the 2003 trial, and therefore are not meaningfully ascertained, because Shell never produced all of the facts necessary to determine the extent of Union Carbide's entire damages. Although the jury did determine the appropriate reasonable royalty rates, Shell did not produce all of the information necessary to determine the sales volume to which the reasonable royalties are applied. Shell withheld sales volume documents for its catalysts used in foreign processes while awaiting this Court's ruling on the scope of 35 U.S.C. §271(f). Without receiving the withheld sales volume information, the extent of Union Carbide's damages cannot be finally determined, or even estimated, even now. The full extent of Union Carbide's damages will be finally determined in the coming week when Shell's produces its sales volume data for its catalysts used in foreign processes and the reasonable royalty rates found by the jury can be applied to those sales.

The cases on which Shell relies are factually distinguishable from this case and further support Union Carbide's position. Unlike the lack of sales data that prohibits a calculation of the extent of Union Carbide's full damages in this case, the cases on which Shell relies involved new verdicts that were fully supported by evidence introduced at the original trial. *See, e.g., Kaiser*, 494 U.S. at 834-36 (the Supreme Court reinstated a vacated jury verdict); *Loughman*, 6 F.3d at 98 ("It is undisputed that everything to which the plaintiffs are entitled was supported by the evidence at the first trial and was ascertained from the jury's verdict at that trial."); *Transmatic*, 180 F.3d at 1349 ("In this case, the damages were meaningfully ascertained at the time of the initial district court judgment because that damages decision was ultimately correct on the

merits."); *Krieser v. Hobbs*, 166 F.3d 736, 747 (5th Cir. 1999) ("For this case, upon the entry of the original judgment, the damages were *fully ascertained*." (emphasis in original)). Shell also relies on *Eaves v. County of Cape May*, 239 F.3d 527 (3d Cir. 2000), which analyzed the distinct issue of when post-judgment interest was calculated on attorney fees. The general holding in *Eaves* also supports Union Carbide because the effective date for interest was the date the attorney fees were fully quantified, not the date that the party was determined to be entitled to attorney fees. *Id.* at 542. Similar to *Eaves*, although Union Carbide's entitlement to damages is clear, the extent of its damages have yet to be fully quantified and until they can be fully quantified, Union Carbide is entitled to interest at the prejudgment rate.

Shell's final argument, that the lack of sales data for catalysts used in foreign processes is irrelevant to the determination of the proper date of the judgment, is directly contrary to all of the law Shell cites. As explained above, without evidence of the volume of Shell's sales for foreign use, the extent of Union Carbide's damages could not be finally determined or meaningfully ascertained. *See Wheeler*, 935 F.2d at 1097. Therefore, because the extent of Union Carbide's damages could not be "meaningfully ascertained" based on the evidence at the 2003 trial, Union Carbide continues to be entitled to interest at the prejudgment rate.

## CONCLUSION

For the foregoing reasons, this Court should order execution for the $153,615,773.69 damages award and allow an accounting for additional sales for domestic use not presented to the jury, both of which Shell does not contest. Furthermore, this Court should appropriately continue to award interest at the prejudgment rate.

Respectfully submitted,

Dated: February 22, 2006

OF COUNSEL:
Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
David R. Bennett
JENNER & BLOCK
One IBM Plaza
Chicago, Illinois 60604
(312) 222-9350

Bruce Kanuch
The Dow Chemical Company
Legal Dept.
2030 Dow Center
Midland MI 48674
(989) 636-2115

/s/ Scott G. Wilcox
Jeffrey B. Bove (Del. No. 998)
James D. Heisman (Del. No. 2746)
Scott G. Wilcox (Del. No. 3882)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Plaintiffs Union Carbide Chemicals & Plastics Technology Corporation and Union Carbide Corporation*

## CERTIFICATE OF SERVICE

I, Scott G. Wilcox, hereby certify that on February 22, 2006, I caused a true and accurate copy of Plaintiffs' Reply In Support Of Their Motion For Entry Of Judgment On The Affirmed Jury's Verdict, to be served on the following counsel by the following method:

Hand Delivery
Alan M. Terrell, Jr.
Jeffrey L. Moyer
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899

Overnight Delivery
William Slusser
Slusser Wilson & Partridge, LLP
4720 Three Allen Center
333 Clay Street
Houston, TX 77002

John D. Norris
Richard L. Stanley
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77057

/s/ Scott G. Wilcox
Scott G. Wilcox (Del. No. 3882)